# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | **NO. 3:14-cr-00063** |
| v. ) | |
| ) | **JUDGE CAMPBELL** |
| **TERRY PHELPS** ) | |

## MEMORANDUM AND ORDER

Pending before the Court are Defendant's *pro se* request for compassionate release (Doc. No. 48), and Motion for Compassionate Release (Doc. No. 53), filed by counsel for Defendant. The Government has filed a Response in opposition (Doc. No. 60), and Defendant has filed a reply (Doc. No. 63). For the reasons set forth below, Defendant's request for compassionate release (Doc. Nos. 48, 53) is **DENIED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Defendant pled guilty, pursuant to a Plea Agreement, to possession with intent to distribute, or distribution, of oxymorphone, in violation of 21 U.S.C. § 841(a)(1) (Count One), before former Judge Kevin H. Sharp. (Doc. No. 34). Through the Plea Agreement, the parties agreed to a sentence of 120 months of imprisonment, and the Government agreed to dismiss Count Two charging unlawful possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). (*Id*.) Defendant also acknowledged he was a Career Offender, and that absent the dismissal of Count Two, he would be subject to a 15-year mandatory minimum sentence under the Armed Career Criminal Act (*Id*.) The Presentence Investigation Report ("PSR") indicates Defendant's Career Offender designation was based on three prior Tennessee convictions for drug trafficking. At the

subsequent sentencing hearing, Judge Sharp imposed the agreed 120-month sentence. (Doc. Nos. 40, 41).[1]

Defendant's pending request references the COVID-19 coronavirus pandemic. The COVID-19 coronavirus pandemic has been declared a national public health emergency.[2] As of December 28, 2020, COVID-19 had killed more than 330,000 Americans and infected over 18 million.[3] The Centers for Disease Control and Prevention ("CDC") advises that individuals with certain underlying health conditions and older adults are at an increased risk for severe illness and death if they contract the virus.[4] The CDC defines "severe illness" as hospitalization, admission to the ICU, intubation or mechanical ventilation, or death.[5] According to the CDC, "[t]he best way to prevent illness is to avoid being exposed to the virus."[6]

---

[1]  The Judgment was later amended to remove a reference to forfeiture of a firearm. (Doc. Nos. 43, 45, 46, 47).

[2]  *See Renewal of Determination that a Public Health Emergency Exists*, www.phe.gov/emergency/news/healthactions/phe/Pages/covid-19-2Oct2020.aspx (renewing, effective Oct. 23, 2020, determination that a nationwide public health emergency exists due to the COVID-19 pandemic and has existed since January 27, 2020) (last visited Dec. 28, 2020).

[3]  *CDC, COVID Data Tracker*, http://covid.cdc.gov/covid-data-tracker (last visited on Dec. 28, 2020).

[4]  CDC, *People Who Are at Increased Risk for Severe Illness*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-increased-risk.html (last visited Dec. 28, 2020).

[5]  CDC, *Evidence Used to Update the List of Underlying Medical Conditions That Increase a Person's Risk of Severe Illness from COVID-19*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/evidence-table.html (last visited on Dec. 28, 2020).

[6]  CDC, *How COVID-19 Spreads*, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/how-covid-spreads.html. (last visited Dec. 28, 2020).

## II. STANDARD OF REVIEW

In December 2018, Congress passed the First Step Act, Section 603 of which transformed the process for compassionate release under § 3582(c)(1)(A) to allow prisoners to directly petition courts. Until this amendment, compassionate release motions could only be brought by the Director of the Bureau of Prisons, an option that was infrequently exercised.[7] The compassionate release statute now states in relevant part:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction…
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission;

18 U.S.C. § 3582(c)(1)(A).

The requirement that a prisoner exhaust administrative rights to appeal or wait 30 days after the first request to the prison is a mandatory claims-processing rule. *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020). In *Alam,* the Sixth Circuit considered the exhaustion

---

[7] The first year after passage of the First Step Act, 145 offenders were granted compassionate release under 18 U.S.C. § 3582(c)(1)(A), a five-fold increase from fiscal year 2018, during which 24 compassionate release motions were granted. *See* United States Sentencing Commission, The First Step Act of 2018: One Year of Implementation, 46-49 (Aug. 31, 2020); *United States v. Jones,* 980 F.3d 1098, 1101 n.1 & 1105 (6th Cir. 2020). Of the motions granted during the first year, 96 were filed by the offender. *Id*.

requirement in the context of the unique circumstances presented by the COVID-19 pandemic and concluded that exhaustion "operates as an 'unyielding procedural requirement[]'" and is not subject to equitable exceptions. *Id*., at 834. If a prisoner fails to comply with the exhaustion requirement, the *Alam* Court instructed that district courts should dismiss the prisoner's request for compassionate release without prejudice. *Id*.

Once the exhaustion requirement is satisfied, district courts in the Sixth Circuit are to evaluate the merits of a request for compassionate release by applying a three-step test. *United States v. Jones*, 980 F.3d 1098, 1105-08 (6th Cir. 2020). "At step one, a court must 'find[]' whether 'extraordinary and compelling reasons warrant' a sentence reduction." *Id*., at 1107-08. Step two requires the court to "'find[]' whether 'such a reduction is consistent with *applicable* policy statements issued by the Sentencing Commission.'" *Id*., at 1108. At step three, the court must consider "any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case." *Id*.

In *Jones*, the Sixth Circuit also addressed the issue of whether the district court, as part of step two, should have applied Sentencing Guideline Section 1B1.13 ("Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) (Policy Statement)"), which was promulgated in 2006. *Id.,* at 1108-11. The court pointed out that, since the First Step Act was enacted in 2018, the Sentencing Commission has not amended the policy statement and, as currently worded, the existing policy statement applies only to motions filed by the BOP. *Id*. Finding the existing policy statement "inapplicable" to cases filed by an imprisoned person, *Jones* instructs that in considering

4

such a filing, a court may "skip" step two of the inquiry and has "full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13." *Id.*, at 1111.

### III. ANALYSIS

As an initial matter, the Court concludes that Defendant has met the exhaustion requirement of Section 3582(c)(1)(A). Defendant has filed the Warden's denial of his request for compassionate release (Doc. No. 53-1), and the Government does not contest that he has exhausted administrative remedies. (Doc. No. 60).

Through his filings, Defendant presents the following basis for his request for compassionate release. Defendant is 54 years old and is currently housed at Manchester FCI in Kentucky. He has served approximately 80% of his 120-month sentence, and his projected release date is October 22, 2022.

Defendant states that he suffers from hypertension and obesity. Defendant points out that, according to the CDC, people with hypertension and obesity are at an increased risk for severe illness if they contract COVID-19.[8] According to Defendant, there have been approximately 200 reported COVID cases at Manchester FCI.[9] Defendant contends the higher risk of developing serious complications if he contracts the virus constitutes "extraordinary and compelling reasons" for the Court to grant compassionate release.

---

[8] According to the latest guidance from the CDC, obese adults "are" at an increased risk of severe illness from the virus, and adults with hypertension or high blood pressure "might be" at an increased risk. (https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Dec. 28, 2020)).

[9] The BOP website reveals that those numbers have increased since Defendant's filing. *See* Bureau of Prisons, *COVID-19 Coronavirus* https://www.bop.gov/coronavirus (last visited Dec. 28, 2020).

The Government argues Defendant's obesity has not been established, and that the BOP has made great efforts to maintain the safety of inmates. The Government also contends that the Section 3553 factors, including the history and characteristics of the defendant, weigh heavily against early release in this case.

For purposes of Defendant's Motion, the Court will assume he has demonstrated "extraordinary and compelling reasons" for compassionate release. As instructed by *Jones,* therefore, the Court will proceed to step three – consideration of the Section 3553(a) factors to determine if release is appropriate.

Section 3553(a) requires the Court to "impose a sentence sufficient, but not greater than necessary" to comply with a number of factors including: the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; the applicable Sentencing Guidelines range; and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. § 3553(a).

Defendant argues these sentencing factors support release because he has served a substantial portion of his sentence, and his age suggests he will not re-offend. Defendant also points out that, while incarcerated, he completed a drug education program and a pre-GED course, and has held various jobs.

The Government argues the 120-month sentence is warranted by Defendant's extensive criminal history, and the facts of the underlying offense. The Government points out that the

6

underlying offense involves the sale of illegal drugs and possession of a firearm. In addition, the Government argues Defendant's prior convictions are so extensive that he would still be in Criminal History Category VI, even if he had not qualified as a Career Offender. Finally, the Government contends, Defendant has already benefited from a reduced sentence through the terms of the Plea Agreement, which allowed him to obtain a sentence below the applicable guideline range.

*Nature and Circumstances of the Offense*. The "Factual Basis" in the Plea Agreement describes Defendant's involvement in several sales of oxymorphone, as well as a transaction involving the purchase of a gun from an undercover officer.

*History and Characteristics of the Defendant*. Defendant is 54 years old. He reported, through the PSR, a relatively stable childhood with his adoptive parents, but also a history of alcohol and marijuana use, as well as sexual abuse by a family member at some point during his childhood. Defendant reported some general work history but did not provide specific dates. As noted above, while incarcerated, Defendant has completed a drug education program and a pre-GED course, and has held various jobs.

According to the PSR, Defendant has numerous criminal convictions, including violent offenses and illegal drug sales, that extend over most of his adult life. As mentioned above, he qualified for the highest criminal history category – Criminal History Category VI (13 or more points) – with 27 criminal history points. He was also determined to be a Career Offender based on his prior convictions for drug trafficking.

*Sentencing Guidelines Range*. With a total offense level of 29 and a Criminal History Category of VI, the applicable Sentencing Guidelines range was 151 to 188 months of

7

imprisonment, but based on the Plea Agreement, Defendant was sentenced below the guideline range. The Plea Agreement also allowed Defendant to avoid a 15-year mandatory minimum sentence as an Armed Career Criminal.

Given the number of Defendant's prior convictions, and the nature of Defendant's offense of conviction and prior convictions, and having considered all the factors listed in Section 3553(a), the Court concludes that a sentence of "time-served" – in this case, approximately 96 months of a 120-month sentence – is not sufficient. A time-served sentence would undermine the need to protect the public, the need to promote respect for the law, and the need to afford adequate deterrence. Accordingly, Defendant's request for compassionate release (Doc. Nos. 48, 53) is **DENIED**.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE